**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| BENJAMIN CHATMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00055-NCC |
| | ) | |
| MISSOURI DEPARTMENT | ) | |
| OF CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Benjamin Chatman for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 3). Having reviewed the motion and the financial information submitted in support, the Court finds that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $57.61. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement. (Docket No. 4). The account statement shows an average monthly deposit of $288.03. The Court will therefore assess an initial partial filing fee of $57.61, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To avoid dismissal, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated as a pretrial detainee at the St. Louis City Justice Center in St. Louis, Missouri. The events described in the complaint took place while he was an inmate at the Southeast Correctional Center (SECC) in Charleston. Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983, naming the Missouri Department of Corrections, Director Anne Precythe, Deputy Warden Bill Stange, and Vocational Enterprise Supervisor Jodie Rumnier as defendants. (Docket No. 1 at 1). Precythe and Stange are sued in their individual capacities only. (Docket No. 1 at 2-3). Plaintiff does not indicate the capacity in which Rumnier is sued. The complaint contains allegations that plaintiff was wrongfully held in prison after his underlying convictions and sentences had been vacated.

In the "Statement of Claim," plaintiff sets forth two separate claims. First, he alleges unlawful imprisonment, asserting that on September 30, 2022, he received notice that his "29.15 post-conviction relief motion was granted, and [his] convictions … vacated and remanded for a new trial." (Docket No. 1 at 4). According to plaintiff, the State of Missouri was given forty days

3

from the date his motion was granted to file a notice of appeal. He contends that the appeal deadline was November 8, 2022, but he remained in the SECC until December 6, 2022. During this time, plaintiff states he continuously inquired as to why he remained "at the prison without conviction." Plaintiff asserts that the delay in leaving SECC violated his Eighth and Fourteenth Amendment rights.

Second, plaintiff asserts that he was made to continue his prison job in violation of the Thirteenth Amendment. In particular, he alleges that even after his convictions were vacated, he "was forced to continue with [his] work program under threats of punishment," receiving pay of fifteen cents an hour. Plaintiff states that this amounts to "slave wages" and therefore violates the Thirteenth Amendment's proscription of slavery, and the guarantee of "fair pay/wages for work performed."

By way of further explanation, plaintiff has attached a "Brief Narrative of Events [Surrounding] Claims." (Docket No. 1 at 5). In this, he states that on October 3, 2022, the caseworker in his housing unit called him "into the sally port to deliver legal mail to" him. That mail included a letter from the attorney who worked on his Rule 29.15[1] motion. The letter advised plaintiff that the attorney was no longer employed by the public defender's office, but "that Judge Bryan Hettenbach had granted [his] motion for relief and vacated [his] convictions and sentences and remand[ed] [his] case for [a] new trial." Plaintiff asserts that he also received a court order to be returned to the jurisdiction of the City of St. Louis.

Plaintiff asserts that he handed these documents to the caseworker, so she could read them. The caseworker handed the documents back to him and told him it was "great news." When

---

[1]Missouri Supreme Court Rule 29.15 provides that "[a] person convicted of a felony after trial" can file a motion "claiming that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States." Mo. S.Ct. R. 29.15(a).

plaintiff returned to his housing unit, he called the public defender's office and spoke with the attorney appointed to represent him. The attorney informed plaintiff that notice would be sent in the mail, "and that the state had 40 days to file [a] notice of appeal if they wished to appeal the decision." As the Rule 29.15 motion had been granted on September 29, 2022, the deadline to appeal was November 8, 2022.

After learning that his convictions and sentences had been vacated, plaintiff asserts he "continuously spoke to the prison staff and [his] attorney about why" he remained at the SECC. While he awaited transfer back to St. Louis, plaintiff states that he "was constantly threatened with conduct violations for disobeying orders while" he tried to contact his attorney. (Docket No. 1 at 6). In particular, he notes that he received a conduct violation from Officer Burris for failing to report to Missouri Vocational Enterprise (MVE) for his work assignment. Earlier, plaintiff had taken his legal documents to MVE and told Officer Clark and Supervisor Waters that he "should no longer be at the prison." Clark and Waters allowed him "to leave early to make calls to [his] public defender," and told him "to show up on Mondays to notify them until [his] situation was handled."

Attached to the complaint are five exhibits, which the Court has reviewed and will treat as part of the pleadings.[2]

The first exhibit is a letter from plaintiff's former public defender, advising him that the attorney no longer represents him, but that his Rule 29.15 motion has been granted. (Docket No.

---

[2] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

1 at 14). The letter tells plaintiff that a new attorney should be getting in contact with him, and explains that "typically" the State of Missouri has "40 days from the date the judgment was entered … to file a notice of appeal." The letter further notes that plaintiff "should be transferred back to the St. Louis City Justice Center once MDOC receives the orders from the court that were issued yesterday." The attorney's letter informs plaintiff that the attorney does not "know when that will be." The letter is dated September 30, 2022.

The second exhibit is a court order in *State of Missouri v. Chatman*, No. 1622-CR00571-02 (22nd Jud. Cir., St. Louis City), dated September 29, 2022. (Docket No. 1 at 15). The order states that the circuit court has granted plaintiff's "Rule 29.15 motion to vacate his conviction," and has returned the criminal case "to the trial docket." The court order further provides that when plaintiff "is returned to the jurisdiction he is ordered held no bond allowed until further order." There is nothing in the order that directs the Missouri Department of Corrections to release plaintiff and transfer him back to the City of St. Louis.

The third exhibit is a court order in *Chatman v. State of Missouri*, No. 1922-CC00134 (22nd Jud. Cir., St. Louis City), dated September 29, 2022. (Docket No. 1 at 16). The court order sets a "status/scheduling conference" for October 21, 2022 at 10:00 a.m. There is nothing in the order that directs the Missouri Department of Corrections to release plaintiff and transfer him back to the City of St. Louis.

The fourth exhibit is a September 30, 2022 letter from an attorney with the public defender's office, advising plaintiff that his Rule 29.15 motion has been granted. (Docket No. 1 at 17). The letter advises plaintiff that the "order is not yet final" and that the State of Missouri has until November 8, 2022 to file an appeal.

Finally, the fifth exhibit is a conduct violation report dated November 30, 2022. (Docket No. 1 at 18). The conduct violation accuses plaintiff of failing to comply with an order and being out of bounds. The violation apparently stems from an incident where plaintiff was asleep when he was supposed to be at the MVE.

Based on these facts, plaintiff states that he has suffered mental anguish and emotional distress. (Docket No. 1 at 8). He seeks $80,000 in punitive damages.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that he was unconstitutionally kept in prison after his underlying convictions and sentences were vacated. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A.  Claim Against the Missouri Department of Corrections

Plaintiff has named the Missouri Department of Corrections as a defendant in this action. This claim is treated as being made against the State of Missouri, of which the Department of Corrections is an instrumentality. The claim is barred by the doctrine of sovereign immunity.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in

the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception also does not apply, as the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to

the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In this case, the Missouri Department of Corrections is a department of the State of Missouri, meaning that the claim against it is actually made against the state itself. As discussed at length above, the State of Missouri is immune from suit under the Eleventh Amendment. Furthermore, no exception to sovereign immunity is apparent in the complaint. Therefore, plaintiff's claim against the Missouri Department of Corrections must be dismissed.

**B. Official Capacity Claim Against Supervisor Rumnier**

Plaintiff has not indicated the capacity in which he is suing Supervisor Rumnier. A plaintiff can bring a 42 U.S.C. § 1983 claim against a public official acting in his or her official capacity, individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). If a plaintiff's complaint is silent about the capacity in which the defendant is being sued, however, the complaint is interpreted as including only official capacity claims. *Id*. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); and *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity").

Because plaintiff has not indicated the capacity in which Supervisor Rumnier is sued, the claim against Rumnier is treated as being brought in an official capacity. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White*

*v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, Supervisor Rumnier is alleged to be employed by the State of Missouri as the supervisor of MVE. As such, the official capacity claim against her is treated as being made against the State itself, her employer. The claim fails for two reasons.

First, "neither a State nor its officials acting in their official capacity are 'persons' under [42 U.S.C.] § 1983." *Will*, 491 U.S. at 71. *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). As plaintiff is seeking only money damages, the State of Missouri is not a § 1983 "person," and plaintiff is missing an essential element of a § 1983 claim.

Second, "[a] claim for damages against a state employee in his [or her] official capacity is barred under the Eleventh Amendment." *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). Because plaintiff is seeking money damages, sovereign immunity prevents his official capacity claim against a state employee. As discussed above, plaintiff does not assert any exceptions to this immunity.

10

For both these reasons, plaintiff's claim against Supervisor Rumnier – which is treated as being made in Rumnier's official capacity – must be dismissed.

### C. Individual Capacity Claims Against Precythe and Stange

Plaintiff has indicated that he is suing Director Precythe and Deputy Warden Stange in their individual capacities only. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights); and *Love v. Schoffman*, 142 Fed. Appx. 278, 279 (8th Cir. 2003) (affirming pre-service dismissal under 28 U.S.C. § 1915 because the complaint, among other infirmities, "did not specify which of the many named defendants was responsible for each of the alleged harms"). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has not presented any facts demonstrating a causal link between an action or inaction on the part of Director Precythe and Deputy Warden Stange on the one hand, and the violation of his constitutional rights on the other. As set forth above, plaintiff asserts that he was wrongfully imprisoned even after his convictions and sentences were vacated. Specifically, he notes that the State of Missouri's deadline to appeal the overturning of his judgment was

11

November 8, 2022, but that he did not leave the SECC until December 6, 2022, approximately 28 days later. At no point, however, is this 28-day delay attributed to either Precythe or Stange. That is, plaintiff has not alleged that Precythe or Stange knew that his convictions and sentences had been overturned, much less that they either ignored or refused to comply with a court order to return him to St. Louis for trial in a timely manner. He has also failed to provide facts indicating that Precythe or Stange had anything to do with him receiving a conduct violation for refusing to go to MVE.

Not only has plaintiff failed to present facts demonstrating personal responsibility, there is no mention of Director Precythe and Deputy Warden Stange in the "Statement of Claim." Aside from being named as defendants in the case caption, and in the section of the form complaint for identifying the parties, they appear nowhere else. Simply placing a defendant's name in the caption is not enough to assert their responsibility. *See Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (agreeing with district court dismissal of two defendants who were named as defendants in the complaint, but who had no factual allegations made against them); and *Krych v. Hvass*, 83 Fed. Appx. 854, 855 (8th Cir. 2003) (agreeing with district court dismissal of defendants who were merely listed in the complaint, and who were not alleged to have been personally involved in the constitutional violations).

To the extent that plaintiff seeks to hold Director Precythe and Deputy Warden Stange liable on the basis of their authority, he has still failed to state a claim. That is to say, plaintiff has failed to establish the personal responsibility of Precythe and Stange for harming him.

"To state a claim against a supervisor, a plaintiff must show that the supervising official, through his [or her] own individual actions, violated the Constitution." *Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020). As such, "[a] general responsibility for supervising the operations

12

of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). *See also Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (explaining that it is settled "that a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement").

Here, as discussed above, plaintiff has not presented any facts showing that Director Precythe and Deputy Warden Stange harmed him due to their actions or inactions. They are not accused of anything at all, other than holding positions of authority within the Missouri Department of Corrections. This is insufficient to state a claim.

The Court further notes that while plaintiff has attached a September 29, 2022 order showing the vacating of his judgment, the order does not direct that plaintiff be released or transferred from the SECC. Rather, it states only that plaintiff is to be held without bond upon his return to the jurisdiction of the 22nd Judicial Circuit. Indeed, plaintiff acknowledges that when this particular order was issued, the State of Missouri still had time to appeal. Upon the Court's review of plaintiff's criminal case,[3] it observes that the state circuit court did not order "the St. Louis City Sheriff to coordinate transport of" plaintiff until December 5, 2022, the day before plaintiff acknowledges leaving the SECC. Thus, it does not appear that any delay in plaintiff's transfer can actually be attributed to Director Precythe, Warden Stange, or any other employee of the Missouri Department of Corrections. None of plaintiff's facts contradict this inference.

For all of these reasons, plaintiff has failed to state a claim against Director Precythe and Deputy Warden Stange in their individual capacities. Therefore, these claims must be dismissed.

---

[3]The Court reviewed plaintiff's underlying cases on Case.net, Missouri's online case management system. The Court takes judicial notice of these public records. *See Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

### D. Individual Capacity Claim Against Supervisor Rumnier

As noted above, plaintiff has not indicated the capacity in which Supervisor Rumnier is sued, which means that the Court must presume that Rumnier is sued in an official capacity only. Even if plaintiff had sued Rumnier in an individual capacity, though, the claim would still be subject to dismissal. Similar to Director Precythe and Deputy Warden Stange, Rumnier is not mentioned at all in the "Statement of Claim." In other words, there are no allegations that Rumnier did or failed to do anything, much less took an action or failed to take an action that resulted in plaintiff's constitutional rights being violated. *See Kohl*, 5 F.3d at 1149 (dismissing claim for lack of "causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights).

It appears that plaintiff named Rumnier as defendant due to her position as MVE supervisor. As already explained, a supervisor can only be personally liable for their own individual actions. *See Morris*, 954 F.3d at 1060. *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018) (explaining that vicarious liability is inapplicable in 42 U.S.C. § 1983 suits). Here, no facts are alleged as to Rumnier's personal involvement. Therefore, even if plaintiff had sued Rumnier in Rumnier's individual capacity, the claim would be subject to dismissal.

### E. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 2). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $57.61 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 2) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 17th day of July, 2023.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**